UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND ALFORD BRADFORD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. MARCHAK,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-1689-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AGAINST PLAINTIFF<br><br>(Doc. 326)<br><br>**FOURTEEN-DAY DEADLINE** |

## I.  Background

Plaintiff Raymond Alford Bradford is state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action was initiated on October 29, 2014, and proceeds on Plaintiff's Eighth Amendment claim against M. Marchak, S. Grewal, J. Depovic, and L. Clausell.  In summary, Plaintiff claims that Defendants knowingly made false statements in multiple *Keyhea* petitions, causing him to wrongfully be involuntarily medicated, and resulting in injuries.[1]  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

---

[1] *Keyhea v. Rushen*, 178 Cal. App. 3d 527, 527 (1986), in which the California Court of Appeal held that "state prisoners presently have a statutory right to refuse long-term treatment with psychotropic drugs absent a judicial determination that they are incompetent to do so."

1

Currently before the Court is Defendants' motion for terminating sanctions against Plaintiff, filed on May 21, 2018. (Doc. 326.) Plaintiff filed an opposition to the motion on June 7, 2018. (Doc. 330.) Defendants filed a reply to the opposition on June 14, 2018. (Doc. 333.) The motion is deemed submitted. Local Rule 230(l).

**II.  Motion for Terminating Sanctions**

    **A.  Relevant Procedural History**

This case has an extensive history spanning some years, which the Court will attempt to summarize here. Following several screenings of the complaint, Defendants answered Plaintiff's second amended complaint on August 7, 2017. (Doc. 26.) On August 10, 2017, the Court issued a discovery and scheduling order. (Doc. 27.)

Over the next few months, between the opening of discovery and the first attempt to take Plaintiff's deposition, discussed further below, Plaintiff filed nearly 50 motions and other filings. These included numerous repetitive, misnamed, onerous, overlapping, premature, and otherwise meritless motions. (Docs. 32, 35, 36, 39, 41, 43, 44, 51, 53, 54, 55, 57, 58, 59, 60, 61, 70, 71, 72, 73, 74, 75, 76, 81, 82, 85, 86, 87, 89, 90, 91, 92, 96, 97, 104, 105, 106, 107, 112, 113, 114, 116, 117, 119, 125, 126, 127, 128.) Plaintiff made multiple filings each week, and sometimes multiple in a day.

While this burdensome motion practice was underway, Defendants both responded to these numerous filings and attempted to conduct discovery on the merits of this action. On January 12, 2018, Defendants served a notice of Deposition and Request for Production of Documents on Plaintiff. (Wilson Decl. & Ex. A, Notice of Deposition, Doc. 197-2, 1-12.) On January 22, 2018, Plaintiff filed an objection to the notice, refusing to provide the documents requested, and declaring in support that his health prevented him from sitting through a deposition. (Doc. 136.) The parties met and conferred, and agreed that Plaintiff's deposition would take place on January 29, 2018, at the R.J. Donovan Correctional Facility in San Diego, California, where Plaintiff was then housed. Defense counsel was required to travel to the deposition, incurring hundreds of dollars in costs for airfare, car rental and gasoline, mileage fees, and hotel accommodations, and attorney's fees for preparation, travel, and for attending the deposition. (Wilson Decl. ¶¶ 9-10; Feher Decl., Doc. 200-1, ¶ 8.) Defendants also incurred costs for court reporter charges for the deposition. (*Id.*)

Defense counsel conducted Plaintiff's deposition on the date scheduled. However, the deposition only lasted a minute or a few minutes. Just before the deposition began, Plaintiff indicated that he would only answer one question from each defense counsel. (Wilson Decl. ¶ 7; Feher Decl. ¶ 5.) A certified deposition transcript submitted by Defendants shows that Plaintiff answered one question put to him by the first defense attorney about how many times he had previously given sworn testimony. Plaintiff then turned to the other defense attorney, stating "Next Question. Your turn." (Pl.'s Jan. 29, 2018 Depo., Doc. 197-2, 4:11-16.) Counsel objected and attempted to speak, and Plaintiff then refused to proceed, stating, "We're done, sir." (*Id*. at 4:17-22.) When counsel asked if Plaintiff was leaving, Plaintiff replied that he "don't feel good" and "I can't sit here and tolerate the riff-raff and shenanigans." (*Id*. at 4:23-5:1.) Plaintiff then stated that he would "be back tomorrow," and exited the deposition. (*Id*.)

Defendants submitted a declaration from a registered nurse at Plaintiff's institution stating that she met with Plaintiff after his deposition, and he refused to be treated. (Wallace Decl., Doc. 197.) Instead, Plaintiff stated that he was "okay" and expressed no health complaints. (*Id*.) The nurse further noted that Plaintiff appeared to be alert, oriented, and showed no signs of distress. (*Id*.)

Based on the foregoing, on March 5, 2018 Defendants Claussell, Depovic, and Marchak filed a motion to compel Plaintiff's attendance at his deposition and for sanctions, including terminating sanctions, for Plaintiff's refusal to participate in discovery. (Doc. 197.) Defendant Grewal filed a joinder in that motion on March 6, 2018. (Doc. 200.)

During the time that this discovery dispute was unfolding, Plaintiff continued his practice of filing redundant, baseless, and harassing motions. Plaintiff filed over 40 additional motions and other filings during the brief period from the noticing of his deposition to the time that Defendants filed their motion to compel and for sanctions. (Docs. 131, 132, 133, 134, 135, 136, 139, 140, 141, 142, 143, 144, 145, 150, 151, 153, 154, 155, 156, 157, 158, 159, 160, 170, 172, 173, 174, 178, 179, 180, 181, 182, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196.)

On April 2, 2018, the Court issued an order denying over 50 of Plaintiff's then-pending motions, and expressly warning Plaintiff that submitting additional baseless, harassing filings would subject him to sanctions. (Doc. 266.) Shortly thereafter, on April 16, 2018, the Court issued an order

3

on 70 additional pending motions, the majority of which were filed by Plaintiff. (Doc. 287.) This order also included a ruling on Defendants' motion to compel Plaintiff's attendance at his deposition and for sanctions. (*Id*.) The Court found that Plaintiff willfully refused to be deposed, impeding this litigation. Although it was a close question at that juncture in the case, the Court declined to recommend sanctions, and instead ordered the parties to meet and confer and agree on a date for Plaintiff's deposition, to be taken on or before June 18, 2018. (*Id*. at 5.) Plaintiff was warned that any continued failure to meaningfully cooperate in discovery, failure to obey a court order, or failure to comply with the Federal Rules of Civil Procedure and the Local Rules, would result in the imposition of sanctions. (*Id*.). The Court also amended the discovery and scheduling order to allow the parties a reasonable amount of additional time to complete discovery. (*Id*. at 6) The Court again expressly warned Plaintiff that the continued filing of duplicative, onerous, baseless filings would result in sanctions, up to and including dismissal of this action. (*Id*. at 9, 11.)

On April 10, 2018, Defendant Grewal filed a motion to compel Plaintiff to provide responses to interrogatories, (Doc. 279), and response to requests for production of documents, (Doc. 280). Plaintiff's responses to the interrogatories are comprised of a slew of meritless objections to straightforward interrogatories requesting the facts that support his claim or the basis for his alleged damages. (Doc. 279-2, Ex. B.) Plaintiff likewise responded with blanket, meritless objections to the requests for documents, and failed to produce any responsive documents. (Doc. 280-d, Ex. B.) Defense counsel's attempts to meet and confer went unanswered. (Gordon Decl. in support of Mtn. to Compel Resps. to Interrogs., Doc. 279-2, ¶ 6; Gordon Decl. in support of Mtn. to Compel Resps. to Reqs. for Produc., Doc. 280-2, ¶ 6.)

On April 17, 2018, the Court again issued an order denying several more of Plaintiff's baseless and duplicative motions to strike, motions to compel, and motions for sanctions. (Doc. 295.) Plaintiff then began filing objections to the Court's orders, raising no new evidence or arguments, and lacking any sufficient grounds for reconsideration of prior rulings. The Court overruled the first set of such objections on April 23, 2018. (Doc. 300). The Court again issued an order denying two more of Plaintiff's meritless, repetitive motions to strike on April 24, 2018. (Doc. 307.) Despite these rulings and repeated warnings, Plaintiff's baseless filings continued almost daily.

| 1  | On April 27, 2018, Plaintiff filed a motion for a protective order pursuant to Federal Rule of

Civil Procedure 26(c), with a declaration in support. (Doc. 316.) Plaintiff sought to either be excused from being deposed, or to be given 14 days to complete his deposition, allowing him to maintain his regular daily schedule while being deposed over a two-week period. (*Id*.) On May 4, 2018, the Court denied Plaintiff's request, finding that under the rules he is required to submit to a deposition, and that his requests were excessive and unduly burdensome. (Doc. 320.) The Court reviewed Plaintiff's submissions concerning his health and other matters, and found that reasonable accommodations could be made for Plaintiff's health issues, meals, and bathroom breaks in the ordinary course of conducting a single-day deposition. (*Id*.) Defendants were ordered to inform the Court within 14 days whether the parties were able to come to an agreement and schedule Plaintiff's second deposition, or whether the Court should consider sanctions in this matter, including terminating sanctions. (*Id*.)

On May 4, 2018, Defendant Grewal served a re-notice of Plaintiff's deposition. (Second Wilson Decl., Doc. 326-4, ¶ 3 and Ex. A.) The date tentatively selected for Plaintiff's deposition was June 7, 2018. (*Id*.) On May 7, 2018, Defendants Clausell, Marchak, and Depovic served a notice of joinder in Defendant Grewal's re-notice of deposition. (*Id*. ¶ 4 and Ex. B.)

On May 11, 2018, Plaintiff filed an objection to Defendants re-noticing his deposition. (Doc. 322.) A few days later, on May 16, 2018, Plaintiff filed an objection to the Court's May 4, 2018 order denying his motion for a protective order. (Doc. 323.) In these filings, Plaintiff clarified that he in fact had no intention of participating in his first deposition, and he continued to seek to be excused from being deposed, or at a minimum to be allowed a deposition lasting 14 days. On May 17, 2018, the Court again overruled Plaintiff's objections, and warned him again that he is required to meaningfully participate in discovery, including his deposition, as the plaintiff in his civil action. (Doc. 324.) The Court again expressly warned Plaintiff that sanctions, up to dismissal of this action in its entirety, would result from his repeated failure to cooperate in discovery and comply with the court's orders and the applicable rules. (*Id*.)

As noted above, on May 21, 2018, the Defendants filed the instant motion for terminating sanctions against Plaintiff, which is now fully briefed.

///

The above summarizes merely part of the proceedings in this case. The docket currently stands at 333 entries. Despite the Court's repeated warnings and admonitions, currently several of Plaintiff's recently-filed, repetitive, baseless, harassing, improper motions to strike and meritless objections remain pending. It is against this backdrop of Plaintiff's needless multiplying of the proceedings, wasted judicial resources, bad faith, harassment, and prejudice to the Defendants, discussed below, that the Court issues these findings and recommendations.

### B. Parties' Arguments

In Defendants' motion and in declarations submitted in support, defense counsel explains that they engaged in a conference call with Plaintiff on May 8, 2018, to meet and confer regarding the scheduling of Plaintiff's second deposition. (Second Wilson Decl. ¶ 5.) During the call, Plaintiff again refused to be deposed. Notably, he also shouted and was argumentative during the call, and used abusive, foul language against counsel and about the Court. This conduct mirrors similar language in Plaintiff's recent filings, including but not limited to references to the Court as "dirty," a "common criminal," "pitiful," "pathetic," "despicable," and inappropriate references to the Court as "Barbie." (Docs. 296, 302, 312, 325, 330.) Strikingly, Plaintiff also repeatedly states in those filings that he cannot take the Court seriously, and that he has no intention of obeying any court orders and will ignore them, and will ignore any attempts to sanction him. (*Id.*)

Based on Plaintiff's abusive and bad faith litigation tactics, the history of this litigation, his ignoring of numerous warnings and admonishments made by the Court, his failure to obey court orders and the rules, and his refusal to meaningfully participating in discovery, depriving them of the right to the fair adjudication of Plaintiff's claim, Defendants seek terminating sanctions. Defendants argue that the circumstances of this litigation make plain that Plaintiff's conduct rises to the level of willfulness, bad faith, and fault. Further, the factors to be weighed in considering terminating sanctions are heavily in favor of termination in this case. These factors include Plaintiff's delay of the resolution of this action, the burden of Plaintiff's tactics on the Court's management of its docket, prejudice to Defendants in the wasted costs and resources and inability to conduct discovery without Plaintiff's cooperation, and the lack of a viable alternative in less drastic sanctions.

///

Plaintiff's opposition contains little substance, contends that Defendants' reasons for seeking sanctions are mere technicalities, and states that he believes he will fare better on appeal before the Ninth Circuit Court of Appeals. Plaintiff further declares in support that he never agreed to be deposed, is not obligated to be deposed, and refuses to do so.

In reply, Defendants assert that Plaintiff's opposition reflects his lack of material opposition to their request for sanctions, as it merely serves to confirm his derogatory, hostile, and long-standing pattern of sanctionable conduct.

**III.     Discussion**

    **A.     Legal Standard**

Broad sanctions may be imposed against a person or party for failure to obey a prior court order compelling discovery. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey an order to provide or permit discovery, a court may issue further just orders, which may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A). The Court also may dismiss the action or proceeding in whole or in part. *Id*. Dismissal and default are such drastic remedies, they may be ordered only in extreme circumstances—i.e., willful disobedience or bad faith. *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). Even a single willful violation may suffice depending on the circumstances. *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (dishonest concealment of critical evidence justified dismissal).

Further, the Court may order sanctions against a party for failure, after being served with proper notice, to appear for that person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Such sanctions may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A). The Court also may dismiss the action or proceeding in whole or in part. *Id*.

Additionally, Local Rule 110 provides that "[f]ailure . . . of a party to comply . . . with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal."

*Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). Terminating sanctions may be warranted where "discovery violations threaten to interfere with the rightful decision of the case." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

### B. The Court Finds that Plaintiff has Acted in Bad Faith

#### 1. Plaintiff's Litigation Tactics and Refusal To Cooperate in Discovery

This action has been pending since July 2011, and Plaintiff shows little interest in expeditiously complying with this Court's discovery orders or fulfilling his discovery obligations. The original discovery period in this action opened on August 10, 2017. (Doc. 27.) Right away, Plaintiff began a pattern of filing numerous onerous, baseless motions, delaying this case, and avoiding his discovery responsibilities. Among his earliest motions was a motion to amend his complaint after having already been granted leave to amend on two previous occasions, where he raised no new allegations or reasons to seek leave to amend yet again. (Doc. 256.) As Defendants responded to these filings, Plaintiff moved to strike each opposition and response. (*See, e.g.*, Docs. 41, 58, 59, 73, 75, 76, 86, 91, 94, 95, 106, 107, 112, 116, 117, 119, 125, 127, 128.) Plaintiff also made numerous repetitive and duplicative motions, beginning a cycle of attempts to respond and motions to strike such responses, and filling the docket with numerous meritless matters. As noted above, despite repeated express warnings to cease these improper litigation tactics, Plaintiff's near-daily filings continued, and some of the more recently-filed of such motions remain pending. (*See, e.g.*, Docs. 297, 303, 304, 305, 306, 309, 310, 311, 312, 313, 314, 315, 317, 318.)

Defendants have also noticed Plaintiff for his deposition twice, and Plaintiff has either failed to cooperate or refused to appear. Moreover, Plaintiff has admitted that he did not intend to cooperate in his first deposition, but let Defendants incur significant expenses for their counsel to prepare for, travel to, and attend the deposition. Plaintiff has also filed multiple motions attempting to avoid sitting for a deposition in this matter, requiring the Court to expend significant resources addressing such motions along with his other numerous filings. Plaintiff has also refused to provide substantive written discovery responses in this action or produce documents, responding only with objections.

Plaintiff's discovery obligation under the Federal Rules of Civil Procedure does not permit him to abdicate his responsibility to respond to properly propounded and pending discovery or to appear

for a properly noticed deposition. In addition, Plaintiff's pro se status does not excuse intentional non-compliance with discovery rules and court orders. *See Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000) (affirming sanction of dismissal, holding that "[a] pro se litigant is bound by the litigation rules as is a lawyer, particularly here with the fulfilling of simple requirements of discovery); *see also Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (holding that district court could not decline to impose any sanction for violation of Fed. R. Civ. P. 11 simply because plaintiff was proceeding pro se).

Plaintiff has known since at least the Court's issuance of the initial discovery and scheduling order on August 10, 2017, that he would be required to appear and cooperate in a deposition. (Doc. 27 ¶ 3 ("Pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), Defendant may depose Plaintiff and any other witness confined in a prison upon condition that, at least fourteen (14) days before such a deposition, Defendant serves all parties with the notice required by Federal Rule of Civil Procedure 30(b)(1).").) At his first deposition on January 29, 2018, Plaintiff willfully refused to be deposed, impeding this litigation. (*See* Doc. 287, at 5-6.) On April 2, 2018, the Court granted Defendants' motion to compel Plaintiff's attendance at a second deposition, and required that he sit for that deposition on or before June 18, 2018. (*Id.*) Although the Court declined to impose sanctions at that juncture, it expressly warned Plaintiff that his continued failure to cooperate in discovery, and any failure to appear and sit for his deposition, would result in findings and recommendations recommending that this action be terminated. (*Id.*)

Following this order, Plaintiff repeatedly filed motions and objections to being deposed. The Court issued no less than three orders denying these requests or overruling these objections, and reminding Plaintiff that he was required to cooperate in discovery—on May 7, 2018, May 9, 2018, and May 17, 2018—yet Plaintiff repeatedly refused to appear and submit to examination by deposition. Up through his opposition to the current motion for sanctions, he remains steadfast in that refusal. (*See* Pl.'s Opp'n, Doc. 330, at 4 ("Plaintiff never agreed to be deposed. For he is NOT obligated to do so.") (emphasis in original).) The above-described conduct constitutes willful discovery disobedience warranting terminating sanctions. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993).

///

9

### 2. The Court Rejects Plaintiff's Excuses for Refusing to Comply

Throughout this action, Plaintiff has filed numerous motions asserting that he is unable to litigate this action or conduct discovery, primarily due to health concerns and other reasons. On these occasions, the Court considered the full docket, and Plaintiff's many submissions regarding his health and other matters. The Court repeatedly found that Plaintiff's *pro se* status, incarceration, and documented health issues did not prevent him from actively litigating this case, and would not prevent him from participating in discovery and being deposed. (Docs. 23, 56, 287, 320, 321, 324, 329.) Moreover, as noted above the Court initially declined to sanction Plaintiff and allowed additional time for the parties to meet and confer and agree to a second deposition with adequate breaks and accommodations for his health issues.

Plaintiff also initially asserted that he failed to cooperate in his first deposition due to health issues, but there was no indication in the record that he requested any break or that his health prevented him from being deposed. Instead his filings and conducts show an unreasonable and willful refusal to appear and cooperate in discovery in this case. Further, Plaintiff's conduct has been characterized by defiance, harassment, and a lack of respect for the Court, the parties, and counsel in this case. Abusive, foul language and disrespectful conduct cannot be tolerated, and Plaintiff has stated that he has no intention of obeying the court's orders and no respect for the judicial process. (*See, e.g.*, Pl.'s April 19, 2018 Objs., Doc. 296, at 3 (". . . this judge . . . is a disgrace, cannot be taken seriously . . . and plaintiff will ignore any and all sanctions, orders or otherwise ruling form this dirty judg[e] who is nothing more than – a common [criminal]."); *see also* Pl.'s April 23, 2018 Objs., Doc. 302, at 3 ("The plaintiff cannot and will not take this judge serious, even if, he eventually wins this case.").)

In short, the Court finds that Plaintiff's conduct has been dilatory, obstructive, and constitutes willful and bad faith disregard for the discovery process and for the Court's orders.

### C. Terminating Sanctions are Appropriate

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their

merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988). The amount of prejudice resulting from the discovery violations and the availability of less drastic sanctions are said to be "key factors." *Wanderer v. Johnston*, 910 F2d 652, 656 (9th Cir. 1990).

Here, the first two factors, the public's interest in expeditious resolution of litigation and the Court's need to manage its docket, weigh in favor of dismissal. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) ("[T]he public's interest in expeditious resolution of litigation always favors dismissal."). This case has been pending since 2014. It currently has 333 docket entries in what should be a relatively straightforward deliberate indifference claim. But even with so many docket entries, the case is mired in a longstanding discovery dispute which should have been resolved by Plaintiff's fully compliant answers and participation in his deposition. Defendants are entitled to know the facts upon which Plaintiff bases his claims and the documents which support his claims. Instead, Plaintiff has engaged in dilatory and obstructionist tactics, and this case has become an undue consumption and waste of limited judicial resources to manage and address Plaintiff's filings. Plaintiff was repeatedly warned that that his failure to timely comply with this Court's orders, the applicable rules, and his failure to meaningfully participate in discovery would lead to sanctions, up to and including the dismissal of this action. Nevertheless, Plaintiff refuses to comply with any of the court's orders and refuses to be deposed or respond to discovery requests.

This Court has not lost sight of the strong interest in resolving cases on the merits. But even this strong interest in deciding cases on the merits cannot override a litigant's conduct in refusing to abide by court orders, insisting on multiplying the proceedings, and wasting judicial resources. As detailed throughout these findings and recommendations, and as is located throughout the docket in the case, the Court has devoted inordinate amounts of time to deal with what should be limited-in-scope claims.

The third factor, risk of prejudice to Defendants, also weighs in favor of dismissal. There is a rebuttable presumption of prejudice to a defendant that arises when a plaintiff unreasonably delays litigation. *In re Eisen*, 31 F.3d 1447, 1452–53 (9th Cir. 1994). "To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to

interfere with the rightful decision of the case." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). The risk of prejudice is considered in relation to plaintiff's reason for defaulting. *Id.* (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 991 (9th Cir. 1999)).

Plaintiff's failure to respond to written discovery requests and to be deposed in this action substantially hinders Defendants' ability to investigate and defend against his allegations. This is particularly true due to the time spent in discovery disputes in this case, caused by Plaintiff's unreasonable conduct, and the time that has passed since the events in this case transpired. In the over ten months since discovery was first opened in this case, Defendants are no further along in learning the evidence which supports Plaintiff's claims than when the case was filed, and no further along in preparing the dispositive motions they seek to file. A deposition is necessary for Defendants to question Plaintiff with respect to the events alleged in the complaint, the circumstances surrounding the events alleged in the complaint, any injuries received, and what damages he is claiming. Instead, due to Plaintiff's conduct, Defendants have been forced to expend time and resources attempting to secure his cooperation by filing motions (including the instant motion for sanctions). The inability to fully defend the case or to move forward with any potential dispositive motions, coupled with the delay, is prejudicial to Defendants.

The fourth factor—public policy favoring disposition of cases on their merits—is greatly outweighed by the factors in favor of dismissal discussed herein. When a case has stalled or is unreasonably delayed by a party's failure to comply with deadlines and discovery obligations, the case cannot move toward resolution on the merits. Thus, the fourth factor—public policy favoring disposition of cases on their merits—is not compelling when it is thwarted by the Plaintiff's dilatory and evasive conduct.

Next, the Court has considered lesser sanctions, but no lesser sanction is warranted. Evidentiary sanctions would be ineffective, as Plaintiff would still be able to testify to information that he has withheld and the Court would have no practical way of excluding such testimony. Monetary sanctions are worthless because of Plaintiff's *in forma pauperis* status. He would likely be unable to pay any monetary sanctions, making such sanctions of little use. Most importantly, the Court

12

repeatedly admonished Plaintiff about his discovery obligations, and issued several warnings about the consequences of continued noncompliance, but Plaintiff has indicated no intent to comply with any rulings or orders by the Court. The Ninth Circuit has explained that "[a] district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir.1986). Here, the Court finds that there are no other, lesser sanctions that would be satisfactory or effective.

Finally, Rule 37 requires "the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). As noted previously, Plaintiff is proceeding *in forma pauperis* in this action, which makes it unlikely that he would be able to pay any monetary sanction. Thus, the imposition of such a sanction would be unjust, and no monetary sanctions will be issued.

For these reasons, the undersigned finds that terminating sanctions are justified and recommends granting Defendants' motion.

**IV.    Conclusion and Recommendations**

Accordingly, the Court HEREBY RECOMMENDS as follows:

1. Defendants' motion for terminating sanctions, (Doc. 326), be granted, and this action dismissed for Plaintiff's failure to obey a court order and failure to meaningfully cooperate in discovery, including his refusal to be deposed. *See* Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(A)(v); Fed. R. Civ. P. 41(b); L.R. 110; and

2. All pending motions and objections be denied and overruled as moot.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

///

///

The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 18, 2018**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE